## OIL AND GAS LEASE.

### THE MURDOCK-WEST CO. v. LOGAN ET AL.

69 Ohio State—Decided, February 2, 1904.

*Oil and Gas Lease—For Certain Time or as long as Oil Found in Paying Quantities—Conditions of Lease Ambiguous—Question of Rent Payment—Interpretation of Contracts—Damages—Lessor and Lessee.*

1. An oil lease for and during the term of sixty days from the date thereof "and as much longer thereafter as oil or gas shall be found in paying quantities," contained the following language: "The drilling of one well to be commenced on these premises within sixty days from the execution of this lease, unavoidable delays excepted, and in case of failure to commence drilling of a well within such time as herein specified, the parties of the second part agree to pay the parties of the first part, for such delay, the sum of fifty dollars per month from the time limited for completing such well, payable by check in advance or directly to the party of the first part, and the parties of the first part agree to accept such sum as full consideration and payment for such delay, until one well shall be completed, unless this lease is surrendered before said payment is due. It is hereby expressly

agreed that a failure to commence, prosecute and complete the drilling of any well or wells, or to pay any rental hereinbefore mentioned within the time limited for the same shall render this lease null and void." This language is ambiguous, and whether the payment of fifty dollars per month as therein stipulated, may be construed as payment of rent, thereby extending the term of the lease, as claimed by the lessees, or whether it must be construed as a payment of liquidated damages for delay, as is claimed by the plaintiffs, is not decided; but on the hypothesis that the term was extended for sixty days in addition to the original term, the lessees could not hold over longer than such additional time unless they actually found and produced oil in paying quantities within that time. A finding of indications of oil or the existence of conditions which rendered it probable that oil in paying quantities would be found if the well were operated in a certain way, is not sufficient of itself to extend the term of the lease.

2. The stipulation in the lease that the term shall continue "as much longer thereafter as oil or gas shall be found in paying quantities," requires that oil or gas shall be actually discovered and produced in paying quantities within the term.

3. Upon the hypothesis that the payment of fifty dollars per month, under the stipulations of the lease, was payment of rent, the failure of the lessees to pay fifty dollars for the month from April 22, 1900, to May 22, 1900, rendered their lease null and void from and after April 22, 1900.

Error to the Circuit Court of Washington County. Decision on rehearing.

The plaintiff in error, a partnership, is a lessee from John Lightner and wife under a lease for operating and drilling for petroleum oil and gas, dated May 23, 1900; and this suit was instituted by the plaintiff in error to enjoin the defendants in error from operating under a prior lease for like purposes, dated December 22, 1899. The court of common pleas granted a perpetual injunction as prayed for, against the defendants in error. On appeal, the circuit court found for the defendants, making a special finding of facts, and entered a decree thereon for the defendants. Other facts appear in the opinion.

*McConica & Dwiggins, C. C. Middleswart* and *M. R. Paterson,* for plaintiff in error.

*A. D. Follett, A. Leo Weil* and *Charles M. Thorp,* for defendants in error.

Davis, J.; Burket, C. J., Spear and Price, JJ., concur.

The lease to the defendants in error, also defendants below, contained the following clause:

"The parties of the second part, or their assigns, to have and to hold the said premises, for the said purpose only, for and during the term of sixty (60) days from the date thereof, and as much longer thereafter as oil or gas shall be found in paying quantities."

The defendants did not commence to drill a well on the leased lands within sixty days from the date thereof, and therefore no oil or gas was found within that time; so that if the rights of the defendants were to be determined solely by that clause, their lease expired on the twenty-second day of February, 1900. But the defendants claim that the term of their lease was extended to April 22, 1900, and that within that time oil in paying quantities was found which entitles them to a continuance of the lease thereafter so long as oil or gas shall be produced in paying quantities. The basis of this contention is the principle that when a lessee holds over after the expiration of the term of the lease, the lessor has the option to treat him as a trespasser or as a tenant under the terms of the original lease. The lessor, John Lightner, in this instance accepted payment from the defendants of fifty dollars on March 1, 1900, and fifty dollars on March 22, 1900, whereby, it is claimed, he treated the defendants as his tenants and extended the term of the lease to April 22, 1900, "and as much longer thereafter as oil or gas shall be found in paying quantities." ·

The plaintiffs maintain, on the other hand, that these payments were not received as rent, but that they are in the nature of liquidated damages, for unavoidable delays in commencing and completing the drilling of a well on the leased lands (*Gas Co.* v. *George*, 161 Pa. St., 47, 51). The provisions of the lease which lead to these opposite propositions, are as follows:

· "The drilling of one well to be commenced on these premises within sixty (60) days from the execution of this lease, unavoidable delays excepted, and in case of failure to commence drilling of a well within such time as herein specified, the parties of the second part agree to pay the parties of the first part for such delay the sum of fifty dollars per month from the time

limited for completing such well, payable by check in advance or directly to the party of the first part, and the parties of the first part agree to accept such sum as full consideration and payment for such delay until one well shall be completed, unless this lease is surrendered before said payment is due. It is hereby expressly agreed that a failure to commence, prosecute and complete the drilling of any well or wells or to pay any rental hereinbefore mentioned within the time limited for the same shall render this lease null and void."

The diversity of views as to the true meaning of this language and as to the legal effect of acts done in performance of it, is perhaps pardonable, for the language itself is ambiguous. The payment of fifty dollars per month would seem, from one point of view, to be spoken of as "rental hereinbefore mentioned," and it is spoken of as "payment for such delay," that is, the "unavoidable delays" previously mentioned. The "rental hereinbefore mentioned" may refer to the royalty of one-eighth of the oil which should be produced and the payment of one hundred dollars per annum, for each and every well from which gas should be sold, which are elsewhere and "hereinbefore mentioned." But accepting the construction of the lease contended for by the defendants, if nevertheless "oil or gas in paying quantities" was not found within the term of the lease as extended to April 22, 1900, the right of the defendants to hold and operate upon the leased lands expired at that date. But the defendants say that the circuit court found that a well was drilled by the defendants and "that oil was found in paying quantities in said well on April 8, 1900," the day before the pumping began. We think that this "finding" is a mere argumentative conclusion from the special findings of fact by the court, that it is inconsistent with and is unwarranted by the facts found, and that upon a review of the whole evidence there is no competent evidence to support it. The circuit court finds that the defendants on April 8, 1900, completed an oil well under their lease, "which was drilled through the oil bearing sand which underlay said tract of land, and from which oil was then being produced in paying quantities on premises adjoining said tract of land." There is not a word in the testimony, nor in this finding, that oil was actually produced on the day the well was completed. It is further found that "after completing said well on April 8, 1900," the defendants "pumped the same with the

drilling machine which had drilled said well, commencing on the morning of April 9, 1900, until about noon on April 12, 1900, when they ceased pumping the same, and * * * that said well was not pumped again until June 1, 1900, when it was pumped by means of a power, such pumping continuing until June 3, 1900,'' at which time further pumping by the defendants was enjoined. The pumping in June was after the lessor had declared the lease void and after the plaintiffs had acquired their title, and the defendants were no doubt moved to do this pumping by the action of the lessor and the plaintiffs. But, with the exception of the finding ''that oil was found in paying quantities in said well on April 8, 1900,'' the day the well was drilled in and the day before the pumping began, we look in vain, in the findings of the circuit court or in the evidence, for anything which shows that oil was produced in paying quantities prior to April 22d, when the lease as extended by the payments of fifty dollars per each month would expire. The circuit court finds that the pumping in April, 1900, was for the purpose of testing the well, and that ''the results of such tests showed that said well *would* produce oil in paying quantities, as was then and there *believed* by the owners of said lease and the owner of said tract of land.'' It is further found that the defendants ''upon such test'' ascertained ''that such well would *probably* produce oil in paying quantities,'' and further that the defendants, ''having decided as a result of such test that such well *would* produce oil in paying quantities, determined to pump said well by means of a power,'' etc. All this demonstrates that while the parties interested may have entertained a well-founded opinion as to the outcome of the well, oil in *paying* quantities had not yet been found, obtained or produced. In order to continue their lease beyond the stipulated time it was necessary for the lessees to *find* oil in *paying* quantities. For this purpose it was not sufficient to complete a well having some indications of oil, or a well which might be developed into a well producing oil in paying quantities, but the lessees must actually find oil in paying quantities, and this is the same as obtaining and producing it in paying quantities (*Cassell* v. *Crothers,* 193 Pa. St., 359, 365, 367, 369). This the defendants did not do before April 22, 1900, and their rights under the lease ended when they ceased to operate the well on April

12, 1900, and did not complete it to the point of producting oil in paying quantities within the term ending April 22, 1900 (*Detlor et al* v. *Holland,* 57 Ohio St., 492; *Gas Co.* v. *Tiffin,* 59 Ohio St., 420.) Nor is this all. If the defendants were justified in believing and did believe, that the well could be developed into a well which would produce oil in paying quantities by the use of a power, and they set about completing the well to that extent by that means, with the consent of the lessor, the obligation was upon them by their contract to compensate the lessor for the unavoidable delay in doing so, by continuing to pay fifty dollars a month in advance; and upon the hypothesis that such payment was rent which would extend the original term of the lease, then by the express terms of the contract the failure of defendants to pay fifty dollars for the month from April 22d to May 22d rendered the lease null and void. Lightner was therefore at liberty to make a new lease; and the lease to the plaintiffs dated May 23, 1900, is valid.

*Judgment of the circuit court reversed and judgment for plaintiffs.*